**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

○

<u>**CIVIL MINUTES – GENERAL**</u>

Case No.  SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013

Title: <u>HOLT V. GLOBALINX PET LLC. ET AL.</u>

PRESENT:

<u>THE HONORABLE DAVID O. CARTER, JUDGE</u>

 <u>Julie Barrera</u>     <u>  N/A  </u>
 Courtroom Clerk     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF: ATTORNEYS PRESENT FOR DEFENDANT:

 None Present       None Present

**PROCEEDINGS: (IN CHAMBERS):  ORDER DENYING DEFENDANTS'**
            **MOTION TO STRIKE, AND GRANTING**
            **IN PART AND DENYING IN PART**
            **DEFENDANTS' MOTION TO DISMISS**

 Defendants Globalinx Pet, LLC and Globalinx Corporation ("Defendants") have filed a Motion to Strike ("MTS" Dkt. 27), as well as a Motion to Dismiss ("MTD" Dkt. 29).  The Court finds these matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; Local Rule 7-15.

 Defendants seek to strike portions of Plaintiff's First Amended Complaint ("FAC" Dkt. 22) concerning her class allegations.  Defendants further seek to dismiss, in whole or in part, Plaintiff's FAC.  After considering the moving papers, Oppositions, and Replies, the Court DENIES Defendants' motion to strike, GRANTS Defendants' motion to dismiss Plaintiff's independent cause of action for unjust enrichment with leave to amend, and DENIES Defendants' motion to dismiss Plaintiff's remaining seven causes of action.

 **I.**  **Background**

 The Court describes the facts as alleged in the FAC brought by Plaintiff Jennifer Holt ("Plaintiff").  On December 11, 2011, Plaintiff purchased "a three-pound bag of Kingdom Pets chicken jerky dog treats."  FAC ¶ 12.  The dog treats were purchased at a Costco in Austin, Texas.  *Id.*  Plaintiff selected Defendants' dog treats over other

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 2

---

competitor products because of representations concerning the foods' quality and
ingredients.  *Id.* ¶ 13.  Named Defendants include Globalinx Pet LLC, a Delaware
company with its place of business in California, and Globalinx Corporation, which is a
California corporation with its place of business in California.  *Id.* ¶¶ 6-7.  Defendants
"operated in concert" in the sale and production of Kingdom Pets dog treats.  *Id.* ¶ 8.

Plaintiff began feeding the Kingdom Pets chicken jerky dog treats to her dog,
Tucker, "one to three times a week" between December 11, 2011, and March 17, 2012.
*Id.* ¶ 16.  Tucker was brought to a veterinarian beginning on March 19, 2012.  *Id.* ¶ 17.
Over the following two days, Tucker was brought repeatedly to the veterinarian, and
received blood tests.  *Id.* ¶ 17.  The blood tests reported "acute kidney failure," which
resulted in Tucker being sent to a veterinary hospital in Austin, Texas.  *Id.* ¶ 17.  Tucker
initially received antibiotic treatment; however, tests later showed that Tucker did not
have a bacterial infection.  *Id.* ¶ 18.  Following a week of failed antibiotic treatment, and
a seizure, Tucker was euthanized pursuant to the recommendation of two veterinarians on
March 28, 2012.  *Id.* ¶ 19.

Prior to adding Kingdom Pets chicken jerky dog treats to Tucker's diet, Tucker
appeared to be in good health.  *Id.* ¶ 14.  Tucker received a physical examination in
October 2011, which "showed no illnesses or abnormal conditions."  *Id.* ¶ 15.  One of
Tucker's treating veterinarians, Sharon Theisen, reviewed Tucker's file on June 11, 2012,
and concluded that the treating team "could not find an infectious [cause] for the renal
failure and [that she] now suspect[s] that there was some toxic exposure.  The Chicken
Jerky Treats that come from China have been implicated in several kidney failure cases in
the last year and [Theisen] think[s] that these may have played a role in Tucker's kidney
disease as well."  *Id.* ¶ 20 (citing Ex. C.).

The dog treats' packaging claimed that the food was "made from '100% Natural
Ingredients' [salt, vegetable glycerin, and chicken] that were 'delicious' and had a 'taste
dogs love.' . . . [and were] 'wholesome and nutritious.'"  FAC ¶ 22.  Plaintiff concludes
that these statements asserted that the jerky dog treats were "safe" and "enjoyable" for
dogs to eat.  *Id.* ¶ 23.  Defendants also placed a press release on their website, which
attested to "Kingdom Pets 100% safety record . . . [with] not one sample [having] tested
positive for known contaminants."  *Id.* ¶ 24.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                          Date:  July 30, 2013
                                                         Page 3

---

However, for years, the FDA had warned about dog treats containing chicken
jerky from China.  *Id.* ¶ 27.  Kingdom Pets chicken jerky products contained chicken
jerky from China.  *Id.* ¶ 28.  A number of Defendants' customers, as well as customers of
other chicken jerky dog treat manufacturers, had complained to the FDA about alleged
health consequences of their dogs consuming these dog treats, and these complaints were
publicized by the FDA.  *Id.* ¶ 30.  Plaintiff concludes that Defendants must have been
aware of the FDA warnings.  *Id.* ¶ 33.  Furthermore, news reports from around the world
had discussed the alleged dangers of Chinese chicken jerky dog food products.  *Id.* ¶¶ 38-
40.  However, Defendants' pet food packaging did not warn consumers about the
information from the FDA.  *Id.* ¶ 35.  Rather, Defendants advertized their products as
wholesome, and Plaintiff and others relied both on these assertions, and the fact that
Kingdom Pets dog food products were continuing to be sold in stores, when purchasing
these products.  *Id.* ¶ 42.  Defendants allegedly intended to conceal information
concerning the unwholesomeness of their product for the purpose of maintaining or
increasing their product's sales.  *Id.* ¶ 46.  Plaintiff asserts that the continued sales of
Defendants' Kingdom Pets chicken jerky dog treats demonstrated that Defendants
"recklessly or maliciously disregarded the rights of plaintiff and class members, for
motives of pecuniary gain and to their financial benefit."  *Id.* ¶ 48.

On March 4, 2013, Plaintiff filed her FAC alleging eight causes of action for (1)
Violation of implied warranties; (2) Violation of express warranties; (3) Common law
fraud; (4) Unjust Enrichment; (5) Negligence; (6) Strict products liability (defect); (7)
Strict products liability (failure to warn); and (8) Violation of the Texas Deceptive Trade
Practices—Consumer Protection Act.  Defendants move the Court to strike portions of
Plaintiff's FAC concerning her class allegations, and further move the Court to dismiss
all eight causes of action pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6).

## II.      Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a
pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous
matter."  Motions to strike are disfavored and "will usually be denied unless the
allegations have no possible relation to the controversy and may cause prejudice to one of
the parties."  *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D.
Cal. 2008) (citations and internal quotation marks omitted); *RDF Media Ltd. v. Fox*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 4

---

*Broad. Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005) ("Motions to strike are generally
disfavored because of the limited importance of pleadings in federal practice and because
it is usually used as a delaying tactic.").  The Ninth Circuit has defined an "immaterial"
matter as "that which has no essential or important relationship to the claim for relief or
the defenses being pleaded," and an "impertinent" matter as "statements that do not
pertain, and are not necessary, to the issues in question."  *Fantasy, Inc. v. Fogerty*, 984
F.2d 1524, 1527 (9th Cir. 1993) (citations and internal quotation marks omitted),
*overruled on other grounds by* 510 U.S. 517 (1994).

A.    **Class Allegations**

When moving to strike requests for class certification, "often the pleadings alone
will not resolve the question of class certification and . . . some discovery will be
warranted" prior to granting a Defendant's motion to strike.  *Vinole v. Countrywide
Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (holding that the trial court was
permitted to deny class certification after it had already allowed almost ten months for
formal and informal discovery); *see also In re Wal-Mart Stores, Inc. Wage and Hour
Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007) (finding that even where "plaintiffs'
class definitions [were] suspicious and may in fact [have] been improper, plaintiffs
should at least be given the opportunity to make the case for certification based on
appropriate discovery").

Defendants argue that Plaintiff's class allegations can properly be dismissed at this
time.  Although Defendants cite a number of cases where Courts have denied a Plaintiff's
motion to certify a class, most of these cases do not discuss striking class allegations so
early in the proceedings.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir.
1983) (considering a motion to strike the motion to reconsider a summary judgment
order, which occurred well after discovery had taken place); *Phillips Petroleum Co. v.
Shutts*, 472 U.S. 797 (1985) (analyzing a class certification that had already been granted,
not a motion to strike class allegations prior to affording parties the opportunity for
discovery); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009)
(granting a motion to strike class allegations only after allowing nearly ten months for
discovery); *Collins v. Gamestop Corp.*, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010)
(granting only those motions to strike class allegations which were not contested by
either party, and denying all other motions to strike class allegations as being
"premature").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                     Date:  July 30, 2013
                                                    Page 5

---

Defendants also cite *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1027 (N.D. Cal. 2007), to demonstrate that courts have granted motions to strike class allegations, early in the course of proceedings, in special circumstances.  MTS at 6. However, *In re Graphics* granted a motion to strike class allegations where there was both a conflict of laws problem, and the law that the plaintiff attempted to apply came from a state that did not have significant contacts with antitrust class plaintiffs in other states, making the particular motion to strike uniquely appropriate in that case.  527 F. Supp. 2d at 1027-28.

In this case, the parties have not yet had an opportunity to pursue significant discovery.  Discovery may be necessary to uncover sufficient information relating to the ability or inability of Plaintiff to demonstrate her compliance with Rule 23 of the Federal Rules of Civil Procedure.  Furthermore, although this Court will discuss how many of the claims brought by Plaintiff do produce a conflict of laws issue (at least between Texas and California), choice-of-laws analyses are "nonconstitutional question[s]" that are distinct from the constitutional analysis involved in the due process inquiry required for examining class allegations.  *See id.* at 1027.  Many questions regarding the appropriateness of class certification are still yet to be answered.  For example, unlike *In re Graphics*, in which it was established that there was a conflict of laws problem *and* that the state lacked sufficient contacts with out-of-state plaintiffs, at this stage of the current proceedings, it is not yet clear whether California or Texas have sufficient contacts with non-resident class plaintiffs in order to fairly strike Plaintiff's class allegations at this time.  *See id.*  Therefore, this Court must not rule on the adequacy of the class certification until both parties have been afforded an adequate opportunity for discovery on the issue.  *See In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d at 615-16.  Therefore, the Court DENIES Defendants' motion to strike Plaintiff's class allegations.

**B.      Texas Deceptive Trade Practices—Consumer Protection Act**

Both parties have now stipulated that arguments concerning Defendants' motion to strike Plaintiff's cause of action for the Violation of the Texas Deceptive Trade Practices—Consumer Protection Act, based on the irrelevance of actions taken by Nestle Purina and Waggin' Train, are now moot.  Defendants' Reply in Support of their Motion

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 6

_____

to Strike ("Reply to MTS") at 2.  The Court acknowledges this stipulation and will not
examine this section of Defendants' Motion to Strike any further.

      **C.**      **Attorney's Fees**

      "The inclusion of claims for attorneys' fees in the Complaint does not constitute
an 'insufficient defense or any redundant, immaterial, impertinent, or scandalous matter'
such that a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) is proper."
*Cardinale v. La Petite Academy, Inc.*, 207 F. Supp. 2d 1158, 1163 (D. Nev. 2002)
(denying a motion to strike attorneys' fees where Defendant could not demonstrate how it
was prejudiced by the fees request).  In this case, Defendants provide no evidence or
argument to suggest that the request for attorney's fees in Plaintiff's FAC would
prejudice them.  Therefore, the Court DENIES Defendants' motion to strike Plaintiff's
request for attorney's fees at this time.  *See id.*

**III.**      **Motions to Dismiss**

      **A.**      **Federal Rule of Civil Procedure 12(b)(1)**

      Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if
the court lacks subject matter jurisdiction to adjudicate the claims.  Once subject matter
jurisdiction is challenged, the burden of proof is placed on the party asserting that
jurisdiction exists.  *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the
party seeking to invoke the court's jurisdiction bears the burden of establishing that
jurisdiction exists").  Accordingly, the court will presume lack of subject matter
jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss.
*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

      In evaluating a Rule 12(b)(1) motion, the question of whether the court must
accept the complaint's allegations as true turns on whether the challenge is facial or
factual.  A facial attack is one in which subject matter jurisdiction is challenged solely on
the allegations in the complaint, attached documents, and judicially noticed facts.  *Safe
Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the
moving party asserts that the lack of federal subject matter jurisdiction appears on the
"face of the pleadings."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139
(9th Cir. 2003).  In the case of a facial attack, the court is required to accept as true all

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                                      Page 7

---

factual allegations set forth in the complaint.  *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

In order to establish standing, a "plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent . . . [and] there must be a **causal connection** between the injury and the conduct complained of…[and] it must be likely…that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted) (emphasis added).

"Under Texas law, causation generally is a question of fact for the jury . . . [and c]ircumstantial evidence and reasonable inferences therefrom may form a sufficient basis for a finding of causation." *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 237 (5th Cir. 2003) (denying summary judgment in a products liability action for an unsafe lighter, because there was evidence presented from which a reasonable juror could have potentially inferred causation).  Although a "temporal connection standing alone is entitled to little weight in determining causation . . . when there is an established scientific connection between exposure and illness or other circumstantial evidence supporting the causal link," the temporal connection can lead to legitimate inferences of causation.  *Johnson v. Arkema, Inc.*, 685 F.3d 452, 467 (5th Cir. 2012) (citations and internal quotation marks omitted) (ignoring evidence of a temporal connection where there was not other evidence available to demonstrate that the connection was plausibly material).

In California, where scientific issues are involved in the cause of action, "causation must be proven within a reasonable medical probability based upon competent expert testimony."  *Sanderson v. Int'l Flavors and Fragrances, Inc.*, 950 F. Supp. 981, 984-85 (C.D. Cal. 1996).  A plaintiff must support an inference of standing "at each stage of litigation in the same manner as any other essential element of the case."  *Warren*, 328 F.3d at 1140 (citations and internal quotation marks omitted).  Therefore, at the motion to dismiss stage, a plaintiff need only allege facts that, "if proved, would confer standing upon him."  *Id.*

Defendants argue that Plaintiff lacks standing to bring her claim because she fails to adequately allege a causal connection between her injuries and the Defendants' product.  MTD at 7.  Defendants claim that "the FAC fails to demonstrate, as it must,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                          Date:  July 30, 2013
                                                        Page 8

---

how the death of Plaintiff's dog resulted from the Defendants' dog treats." *Id.* at 8.
Plaintiff's FAC asserted that her dog Tucker received a physical examination in October
2011, and that the dog was found to be healthy at that time.  FAC ¶ 15.  From December
11, 2011, to March 17, 2012, Plaintiff fed Kingdom Pets chicken jerky dog treats to
Tucker.  *Id.* ¶ 16.  On March 19, 2012, Tucker was taken to a veterinarian.  *Id.* ¶ 17.
Tucker soon after received blood tests which reported "acute kidney failure."  *Id.*  Sharon
Theisen, one of Tucker's treating veterinarians, concluded that Tucker's illness did not
have an infectious cause, but that it was instead likely that the chicken jerky dog treats
caused Tucker's toxic exposure, and resulting injuries.  *Id.* ¶ 20.  Furthermore, chicken
jerky products similar to Kingdom Pets have been reported as potentially dangerous by
the news media and the FDA.  *Id.* ¶ 27-28.

Although Plaintiff has the burden of demonstrating that subject matter jurisdiction
(more specifically in this case, standing) is proper, at the motion to dismiss stage,
Plaintiff need only plead facts that, if true, would demonstrate standing.  *See Scott*, 792
F.2d at 927; *Warren*, 328 F.3d at 1140.  Plaintiff has provided both temporal and
circumstantial evidence, supported by the medical opinion of a professional veterinarian
who worked with Tucker before the dog's death.  If the Court, as it must, assumes all
facts pled by the Plaintiff to be true at the motion to dismiss stage, it appears that
Defendants' dog treats caused or contributed to at least some of the harm experienced by
Tucker, and its owner.  Based on the facts alleged, the plausibility that the element of
causation is present would likely survive substantive scrutiny in both Texas and
California courts.  *See Flock*, 319 F.3d at 237; *Arkema, Inc.*, 685 F.3d at 467; *Sanderson*,
950 F. Supp. at 984-85.  Therefore, this Court DENIES Defendants' Motion to Dismiss
Plaintiff's FAC for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed
when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the
complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v.
Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order
to survive a motion to dismiss).  The pleadings must raise the right to relief beyond the
speculative level; a plaintiff must provide "more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S.
at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, this

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 9

court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment.  *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).  Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires."  This policy is applied with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

    1.    **Conflict of Laws**

As state claims brought under diversity jurisdiction require the application of state substantive law, determining whether Plaintiff has adequately stated a claim requires the Court to determine the appropriate state's law to apply to each given cause of action.  *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938).  Cases brought before a United States District Court under diversity of citizenship apply the conflict of laws rules of the state in which that district resides.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In California, the government interest test determines the appropriate resolution of conflict of laws issues.  *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006).  The government interest test requires the Court to determine (1) whether there is a material difference between the laws of the different jurisdictions; (2) if so, whether "each jurisdiction's interest in the application of its own law under the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                              Date:  July 30, 2013
                                                            Page 10

---

circumstances of the particular case" creates a conflict; and (3) if there is a conflict,
which jurisdiction's "interest would be more impaired" if the law of the other were
applied in the case.  *Id.* at 107-08.  The government interest analysis must be applied
independently to each individual matter of law.  *Beech Aircraft Corp. v. Superior Court*,
61 Cal. App. 3d 501, 519 (1976) (acknowledging that the conflicting interests of the
states may not be the same for every law or cause of action).

Defendants shoulder the burden for demonstrating that an actual conflict of laws
exists between jurisdictions.  *Bruno v. Quten Research Inst., LLC.*, 280 F.R.D. 524, 539-
40 (C.D. Cal. 2011) (denying a conflict of laws issue where the Defendant failed to
provide specific laws of any state to contrast the approach taken under California law).
Defendants must show "material differences in the law, as shown on the facts of [the]
case." *Id.* at 540 (citations and internal quotation marks omitted).  "A state's law is
materially different from California if application of the other state's law leads to a
different result." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183,
1200 (S.D. Cal. 2007).

When an actual conflict has not been established by the "foreign law proponent,"
California law will be applied by United States District Courts operating in California.
*Bruno*, 280 F.R.D. at 540 (citations and internal quotation marks omitted).  Examples of
material differences between jurisdictions may include (but are not limited to) contrasting
rules and applications of scienter requirements and reliance requirements, both of which
can greatly impact the outcome of a case.  *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581,
591 (9th Cir. 2012) (finding in part that California law need not necessarily be applied to
claims brought by class members from all states, merely because Defendant Honda was
headquartered in California and had its principle place of business in the state).

"[E]ach state has an interest in setting the appropriate level of liability for
companies conducting business within its territory." *Id.* at 592 (citing *McCann v. Foster
Wheeler, LLC.*, 48 Cal. 4th 68, 91 (2010)).  Although California no longer follows the
traditional "place of the wrong" rule for choice of law matters, it "nonetheless continue[s]
to recognize that a jurisdiction ordinarily has the predominate interest in regulating
conduct that occurs within its borders." *McCann*, 48 Cal. 4th at 97-98 (citations and
internal quotation marks omitted).  A state's interest applies not only to in-state
companies, but also to out-of-state companies which operate within its jurisdiction.  *Id.* at
97.  In *McCann*, the California Supreme Court asserted that since the harm in that case

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 11

---

(asbestos exposure) occurred in Oklahoma, to a person who was an Oklahoma resident at
the time of the harm, the plaintiff "should not expect to subject defendant to a financial
hazard that [Oklahoma] law had not created."  *Id.* at 99 (citations and internal quotation
marks omitted).  The *McCann* court further found that "California has a lesser interest in
applying its law in that setting than it would in a case in which a defendant is responsible
for exposing a plaintiff to asbestos [harm] within California."  *Id.*

   2.      **Discussion**

      A.      **Implied Warranty**

         In California, goods sold have an implied warranty of merchantability that they
"[a]re fit for the ordinary purposes for which such goods are used."  Cal. Comm. Code §
2314(2)(c).  In Texas, goods sold have an implied warranty of merchantability that they
"are fit for the ordinary purposes for which such goods are used."  Tex. Bus. & Com.
Code § 2.314.  The relevant provisions of Texas and California state law are identical.
However, under California conflict of laws rules, it is recognized that, "[w]hile the
nationwide adoption of the Uniform Commercial Code provides this [implied warranty]
cause of action in virtually all states, it is not applied in the same fashion everywhere."
*Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 (1988) (rejecting assertions
that California law could be applied to all out-of-state class members when the states'
laws differed materially, including with regard to the states' applications of the law of
implied warranty).

         Defendants argue that, contrary to the identical wording of the California and
Texas statutes, material differences between the two approaches can be derived from
differing interpretations of the law by California and Texas state courts regarding the
application of the statutes in defective food products cases.  Defendants' Memorandum of
Points and Authorities on Choice of Law Issues ("D-CLI").  Defendants cite *Mexicali
Rose v. Superior Court*, 1 Cal. 4th 617, 620 (1992), in support of the contention that in
California, the real issue for liability in food products cases is whether injury causing
substances in the food are natural to the food's preparation, or are foreign.  D-CLI at 5-6.
Defendants attempt to contrast *Mexicali* with *Jim Dandy Fast Foods, Inc. v. Carpenter*,
535 S.W.2d 786, 790 (Tex. Civ. App. 1976) which states that "[a]n article is
unreasonably dangerous when the article sold is dangerous to an extent beyond that
which would be contemplated by the ordinary consumer who purchases it, with the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                              Date:  July 30, 2013
                                                             Page 12

---

ordinary knowledge common to the community as to its characteristics."  D-CLI at 6.
*Jim Dandy Fast Foods* further noted that "[t]he defective condition may be the result of
the way in which the product is prepared."  535 S.W.2d at 790.  In *Mexicali*, the Supreme
Court of California also noted that "if the presence of the natural substance is due to a
defendant's failure to exercise due care in the preparation of the food, an injured plaintiff
may [still] state a cause of action in negligence."  1 Cal. 4th at 631.  The two cases
Defendants cite do not demonstrate a significant difference between food products cases
in California and Texas.

Furthermore, unlike *Mexicali*, in which the Plaintiff's injury was caused by a
chicken bone in a chicken enchilada, the injury in this case was not from any object in the
food, but rather from the food being adulterated.  *See id.* at 620.  Plaintiff does not allege
that her dog chocked on, or was cut by a bone or any other object or substance in the dog
food.  Rather, Plaintiff asserts that her dog became ill because the dog treats themselves
were prepared with noxious meat, unfit for consumption, regardless of any object, natural
or not, added during the preparation of the dog treats.  The unique factual background
surrounding Plaintiff's injury contrasts significantly with that of the Plaintiff in *Mexicali*,
and the use of *Mexicali* in the manner Defendants attempt is unpersuasive in this case.

Outside of *Mexicali*, the Defendants have provided no California cases which
could demonstrate an application of its law that would contrast with applications of the
identical law by Texas courts.  Because Defendants have failed to meet their burden to
demonstrate that a material difference exists between California and Texas law regarding
the implied warranty of merchantability, California law will govern regarding this issue.
*See Bruno v. Quten Research Inst., LLC.*, 280 F.R.D. 524 (C.D. Cal. 2011).

As discussed above, in California, goods sold have an implied warranty of
merchantability that they "[a]re fit for the ordinary purposes for which such goods are
used."  Cal. Comm. Code § 2314(2)(c). In food products cases, proving that a breach of
implied warranty caused a plaintiff's injury requires only that "the evidence is susceptible
of a reasonable inference that death or illness resulted from the eating of contaminated
food, [and once] a prima facie case of negligence or of a breach of implied warranty of
the fitness of the food has been established . . . it is erroneous for the court to direct a
verdict for the defendant."  *Dougherty v. Lee*, 74 Cal. App. 2d 132, 137 (1946) (finding
that where the same contamination in cow feed matched the contamination in the cow's
stomach, the evidence was sufficient for a reasonable inference of causation).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 13

---

Defendants argue that Plaintiff's pleading must fail because Plaintiff does not provide the specific ingredient that caused her dog to become sick.  MTD at 12. Plaintiff's FAC asserted that her dog Tucker received a physical examination in October 2011, and that the dog was healthy at that time.  FAC ¶ 15.  From December 11, 2011, to March 17, 2012, Plaintiff fed Kingdom Pets chicken jerky dog treats to Tucker.  *Id.* ¶ 16. On March 19, 2012, Tucker was taken to a veterinarian.  *Id.* ¶ 17.  Tucker soon after received blood tests which reported "acute kidney failure."  *Id.*  Sharon Theisen, one of Tucker's treating veterinarians, concluded that Tucker's illness did not have an infectious cause, but rather identified the chicken jerky dog treats as the likely cause of illness.  *Id.* ¶ 20.  Theisen offers no other potential causes of illness besides the chicken jerky dog treats.  *Id.*  Furthermore, chicken jerky products similar to Kingdom Pets have been reported as potentially dangerous by news media and the FDA.  *Id.* ¶ 27-28.  The FDA issued public statements warning pet owners specifically about chicken jerky dog treats, and has listed numerous complaints from Kingdom Pets' customers who had experienced similar problems to Plaintiff.  FAC Exs. E and F.  Like *Dougherty*, in which contamination in cows' stomachs matching contamination in the cows' feed was sufficient evidence to demonstrate causation, here Plaintiff's dog ate chicken jerky dog treats and experienced symptoms typical of dogs who have likewise consumed such products.  *Dougherty*, 74 Cal. App. 2d at 137.  Whereas in *Dougherty* investigators tested the cow feed for contaminants to make a professional judgment as to the cows' symptoms, in this case, a veterinarian examined Tucker's file and diet in an attempt to make a professional judgment about the cause of Tucker's illness.  Assuming all facts pled to be true, the Court does find Plaintiff's allegations to be sufficient so as to survive a 12(b)(6) motion to dismiss.  Therefore, the Court DENIES Defendants' Motion to Dismiss Plaintiff's cause of action for breach of implied warranty.

## B.    Express Warranty

In California, a cause of action for breach of express warranty requires "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l., Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (citations and internal quotation marks omitted).  California courts have further noted that "breach of express warranty arises in the context of contract formation in which reliance plays no role."  *Id.*  In contrast, although the statutory language in Texas' Business and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 14

---

Commercial Code appears to mirror that of the California Uniform Commercial Code,
Texas requires at least some level of reliance.  Cal. Comm. Code § 2313; Tex. Bus. &
Com. Code § 2.313; *McManus v. Fleetwood Enter., Inc.*, 320 F.3d 545, 550 (5th Cir.
2003).  The inclusion or exclusion of the element of reliance can have a significant
impact on the disposition of a cause of action.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d
581, 591 (9th Cir. 2012).

        Although Plaintiff argues that she relied on the alleged express warranty offered
by Defendants, and any difference between the laws regarding reliance is therefore moot,
at this stage, the Plaintiff has yet to prove reliance.  Opp'n to MTS at 11.  If a trier of fact
determined that Plaintiff did not rely on any express warranty, than in Texas, Plaintiff's
claim would fail, whereas in California, the claim would be unaffected.  Because the
element of reliance could change the outcome of the case, the difference is material.  *See
Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1200 (S.D. Cal.
2007).

        Defendants conduct business in both California and Texas, and thus both states
have interests in applying their law to any potential breach of express warranty.  *See
Mazza*, 666 F.3d at 592.  However, like *McCann*, in which the victim was injured outside
of California (Oklahoma), while a resident of Oklahoma, and the court found Oklahoma
law to be governing, in this case Plaintiff's dog died in Texas, while Plaintiff was a
resident of Texas, allegedly from food purchased in Texas.  *See McCann v. Foster
Wheeler, LLC.*, 48 Cal. 4th at 91.  Furthermore, like *Mazza*, in which Honda having its
corporate headquarters and principle place of business in California did not give rise to
the presumption that California law would necessarily apply to the Plaintiff's claims, here
too, the fact that Defendant Globalinx Pet LLC has its place of business in California, and
Defendant Globalinx Corporation is a California entity with its place of business in
California, does not automatically give rise to the presumption that California law should
apply to Plaintiff's claims.  *See Mazza*, 666 F.3d at 594.  Based on the facts provided by
the Plaintiff, California appears to have no greater interest in applying its laws to
Defendants than it did to Honda in *Mazza*.  *See id.*  As such, Texas has a greater interest
in its law being applied to Plaintiff's claim regarding this issue, these interests would be
more impaired if California law were applied to the case than California's limited
interests would be impaired if Texas law were applied, and Texas law should therefore
govern in regards to the breach of express warranty claim.  *See id.* at 592-94.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                          Date:  July 30, 2013
                                                        Page 15

---

Defendants argue that Plaintiff's cause of action for breach of express warranty must fail because the descriptive terms on the packaging do not provide the basis of an express warranty.  D-CLI at 14 (quoting *White v. R.J. Reynolds Tobacco Co.*, No. Civ. A.H-99-1408, 2000 WL 33993333, at *2 (S.D. Tex. Sept. 27, 2000)).  However, in Texas, "wholesome" does have a significant legal meaning.  For example, Section 221.12 of the Texas Administrative Code uses "wholesome" as a term for describing a particular quality of food.  Tex. Admin. Code tit. 25, § 221.12.   The section describes as its purpose "to assure that meat and poultry products are clean, **wholesome** and truthfully labeled."  Tex. Admin. Code tit. 25, § 221.12(a) (emphasis added).  Furthermore, the section defines "Adulterated" foods, in part, as containing sections or substances that are "unwholesome."  Tex. Admin. Code tit. 25 § 221.12(b)(2)(B).  In addition, the Fifth Circuit has found in other contexts that "[o]ne engaged in the business of selling a product by advertising . . . may be liable on express warranty to a consumer injured by relying upon a misrepresentation in the advertising."  *Lartigue v. R.J. Reynolds Tobacco Co.*, 317 F.2d 19, 25 (5th Cir. 1963).

Defendants' description of the Kingdom Pets dog treats as "wholesome" was advertized for customers to see as they were considering purchasing the packaged dog treats.  Plaintiff argues that these statements on the dog treats' packaging were relied upon when she purchased the product.  Assuming facts pled in Plaintiff's FAC to be true, it appears that "wholesome" was intended to be a description of the product that became the basis of Plaintiff's decision concerning the purchase of the dog treats.  Based on the facts alleged thus far, the Court cannot discredit the advertised description of the term "wholesome," made on the dog treats' packaging, as mere puffery as a matter of law.  Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's cause of action for breach of express warranty at this time.

### C.    Fraud

Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."); *See Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 16

---

2011) (finding that fraud allegations made against a dietary supplement company
sufficiently met the Rule 9(b) standard when the Plaintiff pled that the supplement
contained misleading labeling, that the Plaintiff purchased the product on a particular
date, the Plaintiff provided pictures of the labeling with the Complaint, and the Plaintiff
explained why the statements were "deceptive or fraudulent").  In addition, the allegation
"must set forth what is false or misleading about a statement, and why it is false." *Vess*,
317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th
Cir.1994)).  Rule 9(b)'s heightened pleading standard applies not only to federal claims,
but also to state law claims brought in federal court.  *Vess*, 315 F.3d at 1103.  This
heightened pleading standard ensures that "allegations of fraud are specific enough to
give defendants notice of the particular misconduct which is alleged to constitute the
fraud charged so that they can defend against the charge and not just deny that they have
done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985).

However, "intent, knowledge, and other conditions of a person's mind may be
alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining
that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of
fraud relate to matters particularly within the opposing party's knowledge, such that a
plaintiff cannot be expected to have personal knowledge).

In California "[t]he elements of a fraud claim are:  (1) misrepresentation (e.g.,
false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent
to defraud (i.e. induce reliance); (4) justifiable reliance; and (5) resulting damages."
*Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 436 (C.D. Cal. 2007) (citations and internal
quotation marks omitted).  Although California does have a scienter requirement, "[t]he
representation need not be made with knowledge of actual falsity, but need only be an
assertion as a fact of that which is not true, by one who has no reasonable ground for
believing it to be true."  *Wilke v. Coinway, Inc.*, 257 Cal. App. 2d 126, 136 (1967).  "In
Texas, a plaintiff establishes actionable fraud if the defendant makes a material
representation, that is false, either known to be false when made or is asserted without
knowledge of its truth, that is intended to be and is relied upon, and that causes injury."
*Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).

Defendants argue that the scienter requirement in California is different than that
in Texas.  However, both states require either that the Defendants knew that their
statements were false, or simply presented a false fact as true, without knowledge of its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 17

---

truth.  As such, there is not a material difference between the scienter requirements under California and Texas law that the Defendants have yet demonstrated.

Outside of the scienter requirement, Defendants have only provided information as to the different statutes of limitations in California and Texas.  In this case however, neither of the two statutes of limitations (three years or four years) would prevent Plaintiff from bringing forth a claim, because Plaintiff purchased the pet food in 2011 (less than three years ago).  *See* Cal. Civ. Proc. Code § 338(d); Tex. Civ. Prac. & Rem. Code § 16.004(a)(4).  Therefore, based on the facts of this case, the differences in the statutes of limitations are also not material.

The Defendants have provided no further grounds, or California cases, which could demonstrate an application of California law that would contrast with applications of the relevant Texas law by Texas courts.  Because Defendants have failed to meet their burden to demonstrate that a material difference exists between California law and Texas law regarding fraud, California law will govern regarding this issue.  *See Bruno v. Quten Research Inst., LLC.*, 280 F.R.D. 524 (C.D. Cal. 2011).

Plaintiff alleges that Defendants misrepresented the wholesomeness of their product.  FAC ¶ 22.  Plaintiff further alleges that Defendants knew that their product were not wholesome, or at least were unaware of the truth of their representations when they made these representations, as inferred from the many concerning FDA reports that had been issued regarding Defendants' product (and similar products) preceding the death of Plaintiff's dog.  *Id.* ¶¶ 27-33.  Defendants allegedly concealed the truth about their product intentionally in order to maintain or increase sales of their product.  *Id.* ¶ 46.  Plaintiff asserts that she relied on these misrepresentations.  *Id.* ¶ 42.  As a result of feeding her dog Kingdom Pets chicken jerky dog treats, done in reliance on misrepresentations about the dog treats' wholesomeness, which were intentionally made by the Defendants to maintain product sales, her dog had to be euthanized.  *Id.* ¶¶ 19, 22, 27-33, 42, 46.  Defendants allegedly made these misrepresentations on their packaging and on their website.  *Id.* ¶¶ 22-24.  Similar to *Peviani*, in which providing the content and pictures of deceptive labeling, with explanations of how the statements were deceptive, along with the date of purchase, allowed the fraud allegations to survive scrutiny under Rule 9(b), here too, the Plaintiff has provided the who, what, where, when, and how of the allegedly fraudulent activity, and thus should survive Rule 9(b) review.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 18

---

*See Peviani v. Natural Balance, Inc.*, 774 F. Supp. at 1071.  Therefore, the Court
DENIES Defendants' motion to dismiss Plaintiff's cause of action for fraud.

### D.    Unjust Enrichment

     Defendants concede that there is no material difference between California and
Texas law concerning unjust enrichment.  Without deciding on the truth of the
concession, this Court will apply California law, as Defendants have not proven that the
law of any foreign jurisdiction would be more appropriate.  *See Bruno v. Quten Research
Inst., LLC.*, 280 F.R.D. 524 (C.D. Cal. 2011).

     In California, unjust enrichment is not a separate cause of action.  *Smith v. Ford
Motor Co.*, 462 Fed. Appx. 660 (9th Cir. 2011) (critiquing the argument that unjust
enrichment exists as a separate cause of action as having "no merit").  However, unjust
enrichment can survive the motion to dismiss "when pled as an alternative avenue of
relief."  *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *10 (N.D. Cal. Dec.
28, 2012) (allowing a Plaintiff to plead unjust enrichment in the alternative "based on
quasi-contract").

     Plaintiff claims that "Count IV—Unjust Enrichment" was not pled as an
independent cause of action, but rather was pled in the alternative.  Opp'n to MTD at 17-
18.  However, the Complaint *does* set forth unjust enrichment as a separate cause of
action.  FAC ¶¶ 97-110.  At this time, Plaintiff's FAC does not set up unjust enrichment
as an alternative claim to any cause of action, such as fraud, or some type of quasi-
contract, but rather claims unjust enrichment as an independent form of relief.  Therefore,
the pleading exception outlined in *Colucci* does not apply here.  *See Colucci*, 2012 WL
6737800, at *10.  The Court GRANTS Defendants' motion to dismiss Plaintiff's
independent cause of action for unjust enrichment, with leave to amend.

### E.    Negligence

     Defendants concede that there is no material difference between California and
Texas law concerning negligence.  Without deciding on the truth of the concession, this
Court will apply California law, as Defendants have not proven that the law of any
foreign jurisdiction would be more appropriate.  *See Bruno v. Quten Research Inst.,
LLC.*, 280 F.R.D. 524 (C.D. Cal. 2011).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                        Date:  July 30, 2013
                                                       Page 19

---

"In order to establish negligence under California Law, a plaintiff must establish
four required elements:  (1) duty; (2) breach; (3) causation; and (4) damages."  *Illeto v.
Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003).  Similar to the analysis for a breach of
implied warranty, in order to establish the element of causation for negligence, a plaintiff
need only demonstrate that "the evidence is susceptible of a reasonable inference that
death or illness resulted from the eating of contaminated food, [and once] a prima facie
case of negligence or of a breach of implied warranty of the fitness of the food has been
established . . . it is erroneous for the court to direct a verdict for the defendant."
*Dougherty v. Lee*, 74 Cal. App. 2d 132, 137 (1946).

Defendants argue that because Plaintiff has not adequately pled the element of
causation, Plaintiff's cause of action for negligence must be dismissed.  As discussed
above in Section III(A), the Court disagrees that Plaintiff has failed to plead sufficient
evidence to show that Defendants' Kingdom Pets chicken jerky dog treats caused
Tucker's health problems.  Therefore, this Court DENIES Defendants' motion to dismiss
Plaintiff's cause of action for negligence.

### F.    Strict Products Liability—Defective Design or Manufacture

In California,

> a product may be found defective in design if [either] the plaintiff
> establishes that the product failed to perform as safely as an ordinary
> consumer would expect when used in an intended or foreseeable manner
> . . . [or] the plaintiff demonstrates that the product's design proximately
> caused his injury and the defendant fails to establish, in light of the relevant
> factors, that on balance, the benefits of the challenged design outweigh the
> risk of danger inherent in such design.

*Albee v. Cont'l Tire N. Am., Inc.*, 780 F. Supp. 2d 1005, 1008 (E.D. Cal. 2011) (citations
and internal quotation marks omitted), request for reconsideration granted on other
grounds.  In addition, the Supreme Court of California explicitly "abolish[ed] the
Restatement's requirement that the product prove not only defective but also
'unreasonably dangerous' as a result thereof."  *Cavers v. Cushman Motor Sales, Inc.*, 95
Cal. App. 3d 338, 344 (1979).  In Texas, "[a] manufacturing defect exists when a product

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                    Date:  July 30, 2013
                                                   Page 20

---

deviates, in its construction or quality, from the specifications or planned output in a
manner that renders it unreasonably dangerous." *Shaun T. Mian Corp. v. Hewlett-
Packard Co.*, 237 S.W.3d 851, 858 (Tex. Ct. App. 2007).

        To distinguish California and Texas law, Defendants again proffer the *Mexicali*
test.  D-CLI at 14.  As discussed above in Section III(B)(2)(A), the Court does not find
Defendants' particular use of *Mexicali* to be persuasive, given the factual circumstances
of this case.  However, Defendants also highlight the states' different analytical
approaches to strict products liability, which although "facially similar," are actually
quite different when read in the context of greater California jurisprudence.  D-CLI at 13;
*see Cavers*, 95 Cal. App. 3d at 344 (noting that adding the "unreasonably dangerous"
element to defective design analyses "would permit the manufacturer to escape liability
simply because of the low expectation the ordinary consumer might have for his
product").  Because the element of "unreasonably dangerous" differs between Texas and
California law, and because the California Supreme Court has found this difference to be
material, the Court continues with its government interest analysis.  *Id.*

        As discussed above in Section III(B)(2)(B), Defendants conduct business in both
California and Texas, and thus both states have interests in applying their law to any
potential claim for strict products liability for defective design or manufacture.  *See
Mazza*, 666 F.3d at 592.  However, like *McCann*, in which the victim was injured outside
of California (Oklahoma), while a resident of Oklahoma, in this case Plaintiff's dog died
in Texas, while Plaintiff was a resident of Texas, allegedly from food purchased in Texas.
*See McCann v. Foster Wheeler, LLC.*, 48 Cal. 4th 68, 91 (2010).  Furthermore, like
*Mazza*, in which Honda having its corporate headquarters and principle place of business
in California did not give rise to the presumption that California law would necessarily
apply to the Plaintiff's claims, here too, the fact that Defendant Globalinx Pet LLC has its
place of business in California, and Defendant Globalinx Corporation is a California
entity with its place of business in California, does not automatically give rise to the
presumption that California law should apply to Plaintiff's claims.  *See Mazza*, 666 F.3d
at 594.  Based on the facts provided by the Plaintiff, California appears to have no greater
interest in applying its laws to Defendants than it did to Honda in *Mazza*.  *See id.*  As
such, Texas has a greater interest in its law being applied to Plaintiff's claim regarding
this issue, these interests would be more impaired if California law were applied to the
case than California's limited interests would be impaired if Texas law were applied, and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                              Date:  July 30, 2013
                                                            Page 21

Texas law should therefore govern in regard to the claim for strict products liability for
defective design or manufacture.  *See id.* at 592-94.

Defendants' motion to dismiss Plaintiff's cause of action for strict products
liability for defective design or manufacture rests solely on the argument that Plaintiff's
have not adequately pled the element of causation.  In Texas, "[p]roof other than expert
testimony will constitute some evidence of causation only when a layperson's general
experience and common understanding would enable the layperson to determine from the
evidence, with reasonable probability, the causal relationship between the event and the
condition. Expert testimony is required when an issue involves matters beyond jurors'
common understanding."  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006);
*see also BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 542 (Tex. 2011).  Unless all facts
demonstrate that no reasonable jury could find causation, this element of the claim is "a
question of fact for the jury."  *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1044-
45 (5th Cir. 2011) (refusing to overturn a jury finding of causation even though an expert
did not unequivocally establish the element, because the expert did provide enough facts
that, along with other evidence, allowed the jury to reasonably infer causation).  In
*Goodner*, an expert testified that the recline of a Hyundai seat caused a woman to be
ejected from her car, and that being ejected from a car "greatly increases the risk of
injury."  *Id.* at 1045.  Although the expert did not testify that the ejection specifically
caused the woman's injuries, the Fifth Circuit determined such an inference to be fair and
reasonable for a lay jury to have made, based on the information that the expert did
provide.  *Id.*

In this case, it is likely that the toxicity of chicken jerky dog food would not be
within the common understanding of a layperson.  *See Mack Trucks*, 206 S.W.3d at 583.
However, Plaintiff has provided a statement from one of Tucker's treating veterinarians
which asserted that she "suspect[ed] that there was some toxic exposure [that caused
Tucker's illness].  The Chicken Jerky Treats that c[a]me from China have been
implicated in several kidney failure cases in the last year and [she therefore thought that]
these may have played a role in Tucker's kidney disease as well."  FAC ¶ 20.  Like
*Goodner*, in which the expert did not explicitly state that the product design caused the
injury, but did provide enough information so that a reasonable juror could make a fair
conclusion regarding causation, here too, a reasonable juror could find that the
veterinarian's testimony, in conjunction with the other evidence provided in the FAC,
demonstrates that Defendants' Kingdom Pets dog treats caused Tucker's illness and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SACV13-0041 DOC (JPRx)                     Date:  July 30, 2013
                                                    Page 22

---

death.  *Goodner*, 650 F.3d at 1044-45.  Defendants will be afforded ample opportunity in the future to attempt to impeach the veterinarian and discredit her testimony.  However, at the pleading stage, this Court must take all facts and inferences in the light most favorable to the Plaintiff.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Therefore, the Court DENIES Defendants' Motion to Dismiss Plaintiff's cause of action for strict products liability from defective design or manufacture.

## G.  Strict Products Liability—Failure to Warn

In both California and Texas, courts are guided, to some extent, by the Restatement (Second) of Torts section 402A regarding failure to warn theory in strict products liability.  *Anderson v. Owens-Corning Fiberglas Corp.*, 53 Cal. 3d 987, 995 (1991); *Cavers v. Cushman Motor Sales, Inc.*, 95 Cal. App. 3d 338, 344 (1979) (explaining some of the differences between contemporary California law and the Restatement regarding the removal of the Restatement's "unreasonably dangerous" requirement); *Zavala v. Burlington N. Santa Fe Corp.*, 355 S.W.3d 359, 367 (Tex. Ct. App. 2011).

In California, "despite its roots in negligence, failure to warn in strict liability differs markedly from failure to warn in the negligence context . . . in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial."  *Anderson*, 53 Cal. 3d at 1002-03; *see also Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1157 (E.D. Cal. 2010).  In contrast, Texas courts have held that "the analysis of the duty to warn under strict liability and negligence theories invokes the same basic principles . . . [and thus] the duty to warn under both common law theories [exists] as a single question."  *Hanus v. Tex. Util. Co.*, 71 S.W.3d 874, 882 (Tex. Ct. App. 2002).  This difference in approach is significant, and the Court therefore finds there to be a material difference, in this case, between California and Texas law regarding the failure to warn in the strict liability context.  *See Anderson*, 53 Cal. 3d at 1002-03; *see also Lucas*, 726 F. Supp. 2d at 1157.

Since there is a material difference between California and Texas law, the next step is to determine whether or not both states have interests in having their laws applied.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                     Date:  July 30, 2013
                                                    Page 23

---

For the same reasons discussed in Section III(B)(2)(F) regarding defective design, Texas law should govern this claim.

Defendants' motion to dismiss again rests on the perceived failure of Plaintiff to adequately plead the element of causation.  More typically in strict products liability failure to warn cases, the issue of causation revolves around whether the lack of warning itself caused the plaintiff's injury.  *See Technical Chem. Co. v. Jacobs*, 480 S.W.2d 602 (Tex. 1972).  Defendants do not argue that their failure to warn did not cause Plaintiff's injury, but rather that the use of their product did not cause the Plaintiff's injury.  As discussed in the preceding section on strict products liability for defective design or manufacture (Section III(B)(2)(F)), Plaintiff has adequately pled causation regarding the use of Defendants' product in order to survive a motion to dismiss.  Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's cause of action for strict products liability for failure to warn.

> **H.    Texas Deceptive Trade Practices—Consumer Protection Act**

Both Plaintiff and Defendants agree that the Texas statute, accompanied by Texas case law, should apply to the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA").  Section 17.46(a) of the DTPA declares "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . unlawful."  Tex. Bus. & Com. Code § 17.46(a).  Section 17.46(b)(5) includes "representing that goods or services have . . . characteristics . . . [or] benefits . . . which they do not" as an example of covered statements.  Tex. Bus. & Com. Code § 17.46(b)(5).

Because the two parties have agreed on the use of Texas law, both have waived further consideration on the issue.  *Riley v. Fitzgerald*, 178 Cal. App. 3d 871, 891 (1986) (finding that a party that had agreed to apply Texas law, could not later "seek reversal for errors which he committed or invited," particularly when a conflict of laws analysis would have produced the same choice of law anyway), *superseded on other grounds by* 53 Cal. 3d 1180, 1184 (1991).

Defendants first argue that Plaintiff's cause of action for a violation of the DTPA fails because it does not provide sufficient factual details in order to meet the requirements of Rule 9(b).  As discussed earlier in the section on fraud (Section III(B)(2)(C)), this Court finds that Plaintiff has pled with sufficient particularity the facts

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV13-0041 DOC (JPRx)                          Date:  July 30, 2013
                                                        Page 24

required to meet the threshold set by Rule 9(b).  Defendants next argue that the alleged misrepresentations constitute nothing more than "non-actionable puffery."  MTD at 25. As analyzed above in the section on express warranties (Section III(B)(2)(B)), this Court finds that, at least for the word "wholesome," some of Defendants' representations go beyond mere non-actionable puffery.  Defendants have provided no additional arguments as to why this cause of action should be dismissed.[1]  Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's cause of action for the violation of the DTPA.

## V.     Disposition

        For the reasons stated above, the Court DENIES Defendants' motion to strike, GRANTS Defendants' motion to dismiss Plaintiff's independent cause of action for unjust enrichment with leave to amend to and including August 12, 2013, and DENIES Defendants' motion to dismiss Plaintiff's remaining seven causes of action.

        The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

MINUTES FORM 11
CIVIL-GEN                                               Initials of Deputy Clerk: jcb

---

[1] Defendants had previously argued that the Texas class of individuals Plaintiff claimed to represent involved those who purchased Nestle Purina or Waggin' Train products, and not products sold by Defendants.  MTD at 25. Defendants have since stipulated that, following Plaintiff's correction in her Complaint, this third argument is now moot.  Reply to MTS at 2.