O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **JENNIFER HOLT,** | Case No.: SA CV 13-0041 DOC(JPRx) |
| Plaintiff, | |
| vs. | **ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| **GLOBALINX PET LLC, et al.,** | |
| Defendants. | |

Before the Court is Plaintiff Jennifer Holt's ("Plaintiff's") Motion for Class Certification (Dkt. 40). After considering all filings and supplemental briefing related to the motions and oral argument, the Court DENIES Plaintiff's Motion.

**I.     Background**

The gravamen of the First Amended Complaint ("FAC") (Dkt. 22) is that Defendants Globalinx Pet LLC and Globalinx Corporation (collectively, "Defendants" or "Globalinx") marketed and sold tainted dog treats containing chicken jerky that had been made in China.

According to her FAC, on December 11, 2011, Plaintiff purchased "a three-pound bag of Kingdom Pets chicken jerky dog treats." FAC ¶ 12. The dog treats were purchased at a Costco in Austin, Texas. *Id.* Plaintiff selected Defendants' dog treats over other competitor products because of representations concerning the foods' quality and ingredients. *Id.* ¶ 13.

Plaintiff began feeding the Kingdom Pets chicken jerky dog treats to her dog, Tucker, "one to three times a week" between December 11, 2011, and March 17, 2012. *Id.* ¶ 16. Tucker was brought to a veterinarian beginning on March 19, 2012. *Id.* ¶ 17. Over the following two days, Tucker was brought repeatedly to the veterinarian, and received blood tests. *Id.* ¶ 17. The blood tests reported "acute kidney failure," which resulted in Tucker being sent to a veterinary hospital in Austin, Texas. *Id.* ¶ 17. Tucker initially received antibiotic treatment; however, tests later showed that Tucker did not have a bacterial infection. *Id.* ¶ 18. Following a week of failed antibiotic treatment, and a seizure, Tucker was euthanized pursuant to the recommendation of two veterinarians on March 28, 2012. *Id.* ¶ 19.

Prior to adding Kingdom Pets chicken jerky dog treats to Tucker's diet, Tucker appeared to be in good health. *Id.* ¶ 14. Tucker received a physical examination in October 2011, which "showed no illnesses or abnormal conditions." *Id.* ¶ 15. One of Tucker's treating veterinarians, Sharon Theisen, reviewed Tucker's file on June 11, 2012, and concluded that the treating team "could not find an infectious [cause] for the renal failure and [that she] now suspect[s] that there was some toxic exposure. The Chicken Jerky Treats that come from China have been implicated in several kidney failure cases in the last year and [Theisen] think[s] that these may have played a role in Tucker's kidney disease as well." *Id.* ¶ 20 (citing Ex. C.).

The dog treats' packaging claimed that the food was "made from '100% Natural Ingredients' [salt, vegetable glycerin, and chicken] that were 'delicious' and had a 'taste dogs love.' . . . [and were] 'wholesome and nutritious.'" FAC ¶ 22. Plaintiff concludes that these statements asserted that the jerky dog treats were "safe" and "enjoyable" for dogs to eat. *Id.* ¶ 23. Defendants also placed a press release on their website, which attested to "Kingdom Pets 100% safety record . . . [with] not one sample [having] tested positive for known contaminants." *Id.* ¶ 24.

|   |   |
|---|---|
| 1 | However, in past years, the FDA has warned about dog treats containing chicken jerky |
| 2 | from China. *Id.* ¶ 27.  Kingdom Pets chicken jerky products contained chicken jerky from |
| 3 | China. *Id.* ¶ 28.  A number of Defendants' customers, as well as customers of other chicken |
| 4 | jerky dog treat manufacturers, had complained to the FDA about alleged health consequences of |
| 5 | their dogs consuming these dog treats, and these complaints were publicized by the FDA. *Id.* ¶ |
| 6 | 30.  Plaintiff concludes that Defendants must have been aware of the FDA warnings. *Id.* ¶ 33. |
| 7 | Furthermore, news reports from around the world had discussed the alleged dangers of Chinese |
| 8 | chicken jerky dog food products. *Id.* ¶¶ 38-40.  However, Defendants' pet food packaging did |
| 9 | not warn consumers about the information from the FDA. *Id.* ¶ 35.  Rather, Defendants |
| 10 | advertised their products as wholesome, and Plaintiff and others relied both on these assertions, |
| 11 | and on the fact that Kingdom Pets dog food products were continuing to be sold in stores, when |
| 12 | purchasing these products. *Id.* ¶ 42.  Defendants allegedly intended to conceal information |
| 13 | concerning the unwholesomeness of their product for the purpose of maintaining or increasing |
| 14 | their product's sales. *Id.* ¶ 46.  Plaintiff asserts that the continued sales of Defendants' Kingdom |
| 15 | Pets chicken jerky dog treats demonstrated that Defendants "recklessly or maliciously |
| 16 | disregarded the rights of plaintiff and class members, for motives of pecuniary gain and to their |
| 17 | financial benefit." *Id.* ¶ 48. |
| 18 | On March 4, 2013, Plaintiff filed her FAC alleging eight causes of action for (1) |
| 19 | Violation of implied warranties; (2) Violation of express warranties; (3) Common law fraud; (4) |
| 20 | Unjust Enrichment; (5) Negligence; (6) Strict products liability (defect); (7) Strict products |
| 21 | liability (failure to warn); and (8) Violation of the Texas Deceptive Trade Practices—Consumer |
| 22 | Protection Act.  Defendants moved to strike (Dkt. 27) portions of Plaintiff's FAC concerning |
| 23 | her class allegations, and also moved to dismiss (Dkt. 29) all eight causes of action pursuant to |
| 24 | Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Court requested additional briefing |
| 25 | on whether Texas or California law should govern each of the FAC's eight causes of action |
| 26 | (Dkt. 56), and, after considering the parties' responses, denied Defendants' motion to strike and |
| 27 | denied in part Defendants' motion to dismiss. *See* Minute Order (Dkt. 74).  While only |
| 28 | Plaintiff's fourth cause of action for unjust enrichment was dismissed, the Court analyzed each |

cause of action according to California's conflict of law test and held that Texas law should govern four causes of action (liability based on express warranties, strict products liability and Texas's Deceptive Trade Practices law) and California should govern the remaining claims. *Id.*

In her current motion, Plaintiff seeks class certification of five nationwide classes (collectively, the "Five Classes").

### a. Class A ("Warranties Class")

All persons in the United States (except Louisiana and Puerto Rico) who purchased any dog treat product containing chicken jerky manufactured or sold by defendants and containing chicken imported from China, on or after a date four years prior to the filing of this action – as to Counts I and II of the amended complaint (Doc. 22), alleging breaches of warranties of merchantability, contrary to the Uniform Commercial Code (codified in California as Cal. U.C.C. §§2313 and 2314).

### b. Class B ("Fraud Class")

All persons who purchased any dog treat product containing chicken jerky manufactured or sold by defendants and containing chicken imported from China, on or after a date three years prior to the filing of this action – as to Count III of the amended complaint, alleging common law fraud.

### c. Class C ("Unjust Enrichment Class")

All persons who purchased any dog treat product containing chicken jerky manufactured or sold by defendants and containing chicken imported from China, on or after a date four years prior to the filing of this action – as to Count IV of the amended complaint, seeking restitution for unjust enrichment.

### d. Class D ("Negligence and Product Liability Class")

All persons who purchased any dog treat product containing chicken jerky manufactured or sold by defendants and containing chicken imported from China, on or after a date four years prior to the filing of this action, whose dogs suffered harm or death due to the consumption of defendants' products – as to (1) Count V of the amended complaint for damages brought about

by defendants' negligence, and (2) Counts VI and VII for damages caused by a defective product, and for failure to warn about that same defect.

### e. Class E ("Texas Deceptive Trade Practices Class")

All persons who purchased any dog treat product containing chicken jerky manufactured or sold by defendants and containing chicken imported from China, on or after a date two years prior to the filing of this action – as to Count VIII of the complaint, seeking relief pursuant to the Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Comm. Code. §17.41 *et seq.*

## II.     Legal Standard

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). The party may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977) (citing *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir. 1969)).

After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate either: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; or (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action. Fed. R. Civ. P. 23(b)(1-3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). However, a party seeking class certification must affirmatively demonstrate compliance

with Rule 23—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties and common questions of law or fact. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

### III. DISCUSSION

Any proposed class must satisfy Rule 23(b), and, here, the Plaintiff seeks certification pursuant to Rule 23(b)(3). In order for a class action to be certified under Rule 23(b)(3), the class representatives must show "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P 23(b)(3).

While predominance is "readily met in certain cases alleging consumer . . . fraud," *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006), and this Court has previously certified nationwide classes in cases where the defendant has failed to show a material difference between the consumer protection laws of different states, *see, e.g., Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012), the particular facts and history of this case have convinced the Court that a nationwide class is inappropriate. While the Plaintiff maintains that the laws of California should apply to the proposed nationwide classes, the Defendants have catalogued a series of material differences between the consumer protection laws of several states and those of California, *see* Def's Mot. to Strike (Dkt. 27), and, crucially, this Court has already performed a case-specific conflict of law analysis and determined that Texas law would govern four of the named Plaintiff's causes of action. July 30 Minute Order (Dkt. 74) at 14, 21-24.

Because the Defendants have met their burden and showed that the relevant consumer protection laws are "materially different" across different jurisdictions covered by the proposed nationwide classes, *see Bruno,* 280 F.R.D. at 550 (citing *Mazza v. Am. Honda Motor Co., Inc.*,

666 F.3d 581, 590 (9th Cir. 2012)), the Court concludes that the Plaintiff's proposed classes do not meet the predominance and superiority requirements of Rule 23(b)(3).[1]

### a. Predominance

The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation," a standard "far more demanding" than the commonality requirement of Rule 23(a). *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). While predominance is "readily met in certain cases alleging consumer . . . fraud," *Anchem*, 521 U.S. at 625, that is not always the case—when the causes of action in a complaint are based on state statute or common law, material differences in state law across the jurisdictions covered by the class may "compound the disparities" among class members from different states and reveal that a proposed class fails to satisfy the predominance requirement, *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189, *amended by* 273 F.3d 1266 (9th Cir. 2001). The Ninth Circuit has held that a nationwide class should not be certified if "materially different consumer protection laws" would require different state laws to govern different class plaintiffs, based on a conflict of law analysis using "the facts and circumstances of [each specific] case." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590, 594 (9th Cir. 2012).

### i. Conflict of Law Test

In California, the government interest test determines the appropriate resolution of conflict of laws issues. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006). The government interest test requires the Court to determine (1) whether there is a material difference between the laws of the different jurisdictions; (2) if so, whether "each jurisdiction's interest in the application of its own law under the circumstances of the particular case" creates a conflict; and (3) if there is a conflict, which jurisdiction's "interest would be more impaired" if the law of the other were applied in the case. *Id.* at 107-08. The government interest analysis must be applied independently to each individual matter of law. *Beech Aircraft Corp. v.*

---

[1] Accordingly, the Court does not reach the question of whether Plaintiff's proposed classes satisfy the threshold requirements of Rule 23(a).

*Superior Court*, 61 Cal. App. 3d 501, 519 (1976) (acknowledging that the conflicting interests of the states may not be the same for every law or cause of action).

Defendants shoulder the burden for demonstrating that an actual conflict of laws exists between jurisdictions. *Bruno v. Quten Research Inst., LLC.*, 280 F.R.D. 524, 539-40 (C.D. Cal. 2011) (denying a conflict of laws issue where the Defendant failed to provide specific laws of any state to contrast the approach taken under California law). Defendants must show "material differences in the law, as shown on the facts of [the] case." *Id.* at 540 (citations and internal quotation marks omitted). "A state's law is materially different from California if application of the other state's law leads to a different result." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1200 (S.D. Cal. 2007).

When an actual conflict has not been established by the "foreign law proponent," California law will be applied by United States District Courts operating in California. *Bruno*, 280 F.R.D. at 540 (citations and internal quotation marks omitted). Examples of material differences between jurisdictions may include (but are not limited to) contrasting rules and applications of scienter requirements and reliance requirements, both of which can impact the outcome of a case. *Mazza,* 666 F.3d at 591 (finding in part that California law need not necessarily be applied to claims brought by class members from all states, merely because Defendant Honda was headquartered in California and had its principle place of business in the state).

Although California no longer follows the traditional "place of the wrong" rule for conflict of law matters, it "nonetheless continue[s] to recognize that a jurisdiction ordinarily has the predominate interest in regulating conduct that occurs within its borders." *McCann*, 48 Cal. 4th at 97-98 (citations and internal quotation marks omitted). A state's interest applies not only to in-state companies, but also to out-of-state companies that operate within its jurisdiction. *Id.* at 97. In *McCann*, the California Supreme Court asserted that since the harm in that case (asbestos exposure) occurred in Oklahoma, to a person who was an Oklahoma resident at the time of the harm, the plaintiff "should not expect to subject defendant to a financial hazard that [Oklahoma] law had not created." *Id.* at 99 (citations and internal quotation marks omitted).

1 The *McCann* court further found that "California has a lesser interest in applying its law in that
2 setting than it would in a case in which a defendant is responsible for exposing a plaintiff to
3 asbestos [harm] within California." *Id.*

### ii. In this case, material differences exist and different states' laws would govern Plaintiff's various causes of action

Here, in addition to dismissing Plaintiff's fourth cause of action for unjust enrichment because, "[i]n California, unjust enrichment is not a separate cause of action," the Court analyzed each remaining cause of action according to California's conflict of law test. July 30 Minute Order at 18. While Plaintiff argued that California's laws should apply across the board (with the exception of her Texas Deceptive Trade Practices claim), the Court held that Texas law would govern four of the named Plaintiff's causes of action. *Id.* at 9-24. In doing so, the Court explicitly considered whether there was a material difference between the laws of the different jurisdictions, whether "each jurisdiction's interest in the application of its own law under the circumstances of the particular case" created a conflict, and which jurisdiction's "interest would be more impaired" if the law of the other were applied in the case. *Kearney*, 39 Cal. 4th at 107. Thus, without looking at the other 48 states that Plaintiff's proposed class seeks to cover, the Court has already held that a Texas plaintiff would be subject to materially different laws than a California plaintiff in this action. *See, e.g.,* July 30 Minute Order at 14 (in the context of Plaintiff's express warranty claim, "[i]f a trier of fact determined that Plaintiff did not rely on any express warranty, then in Texas, Plaintiff's claim would fail, whereas in California, the claim would be unaffected," and, applying California's conflict of law analysis, Texas law would apply to a Texas plaintiff's claims).

In addition, Defendants have catalogued a number of ways in which California's consumer protection laws differ from those of other states, based on Plaintiff's claims in this particular case. *See* Def's Mot. to Strike at 7-11. For example, at least three states have passed comprehensive product liability statutes that preempt common law causes of action based on harms caused by a product, which would certainly materially affect the warranty and strict product liability claims of potential class plaintiffs in those states. *Id.* at 7-8 (citing Conn. Gen.

Stat. Ann. § 52-572n(a); Ohio Rev. Code Ann. § 2307.71(B); *Macias v. Saberhagen Holdings, Inc.*, 282 P.3d 1069, 1073 (Wash. 2012)).

Similarly, the split in authority between states whose express warranty laws require a showing of reliance and those that don't, already identified as material by this Court in the context of a comparison between Texas and California, *see* July 30 Minute Order at 14, also reveals conflicts between California and, at least, Minnesota, Kentucky, and Oklahoma. *See* Def's Mot. to Strike at 8 (citing *Hendricks v. Callahan*, 972 F.2d 190, 193 (8th Cir. 1992); *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1291 (6th Cir. 1982); *Speed Fastners, Inc. v. Newsom*, 382 F.2d 395, 397 (10th Cir. 1967)). Likewise, in the context of strict products liability, Defendants supplement the Court's holding that Texas and California laws materially differ, *see* July 30 Minute Order at 20-24, with examples of materially different laws from Ohio, *see Birchfield v. Int'l Harvester Co.*, 726 F.2d 1131, 1138 (6th Cir. 1984), and Iowa, *see Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 289 (Iowa 1994), which would indicate that Ohio or Iowa law would govern the strict products liability claims of potential class plaintiffs from those states.

### iii. Because Defendants have met their burden and demonstrated that materially different consumer protection laws would govern the claims of class members from different states, nationwide certification is improper.

Because of the material differences between the laws of California and those of several states described in the previous section, and this Court's lengthy and detailed holding that the named Plaintiff herself would be subject to different laws than a California plaintiff, the Court must conclude that common questions of law do not predominate over the questions affecting individual class members as required by Rule 23(b)(3).

In *Mazza*, the Ninth Circuit vacated the certification of a nationwide class where the plaintiffs, alleging that a car company made various misrepresentations in six marketing campaigns using various media regarding a technology package in its cars, brought claims under four California causes of action. *Mazza,* 666 F.3d at 587. After following the same California conflict of law rules that this Court applied to decide whether California law would govern all of

Plaintiff's claims here, the court ultimately concluded that "[u]nder the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594.

As in *Mazza*, the Defendants here have "detailed the ways in which California law differs from the laws of the . . . other jurisdictions." *Bruno*, 280 F.R.D. at 544 (quoting *Mazza*, 666 F.3d at 591). Also as in *Mazza*, the Court here has determined that several material differences exist in the laws governing the class plaintiffs' various claims across different states. Accordingly, as in *Mazza*, the Court must find that the certification of Plaintiffs' proposed nationwide classes would be improper.[2] *See Mazza*, 666 F.3d at 594; *see also Gianino v. Alacer Corp.*, 846 F.Supp.3d 1096, 1099 (C.D. Cal. 2012) (denying nationwide class certification when the defendant "presented a comprehensive nationwide analysis detailing the significant variations in the states' consumer protection and fraud laws," and the court's conflict-of-laws analysis revealed that plaintiffs in different states would be subject to materially different laws).

Plaintiff urges the Court to look to its own opinion in *Bruno*, in which this Court certified—then declined to decertify in light of the Ninth Circuit's *Mazza* decision—a nationwide class of purchasers of a liquid dietary supplement alleging false advertising and unfair competition claims under California law. 280 F.R.D. at 545. In that case, however, the

---

[2] While this Order focuses on the predominance analysis, the Court also notes that Defendants have presented evidence showing that the representations on the pet food packaging that form the basis for several of the named Plaintiff's claims are neither uniform nor clearly identified in her proposed class definitions—while Plaintiff's proposed classes cover anyone who purchased a product containing chicken jerky manufactured in China, Defendants note that over a dozen versions of at least six different products containing chicken feature different language and various combinations of phrases like "wholesome," "no artificial colors or flavors," "100% natural ingredients," and many similar phrases. *See* Def's Opp'n to Class Cert. (Dkt. 66, Ex. 2) at 5-12, 18-20 (citing *Bruno*, 280 F.R.D. at 534 (the plaintiff "failed to show she is typical of those class members exposed to the representation that Defendants' product is '3X' more absorbent because Plaintiff was exposed only to the representation that the product has '6X BETTER ABSORPTION' and is '6 Times More Effective.'")).

-11-

Court relied on the fact that the defendants had failed to meet their burden by showing that a conflict of laws existed between California and any other state—indeed, the Court pointed out that, in contrast to the defendants in *Mazza*, "Defendants' prior briefing provided *no law from any jurisdiction for the Court to consider* and thus Defendants did not meet their burden of showing that there is an actual conflict between California and other law." *Id.* at 546 (internal quotations omitted and emphasis added).   Accordingly, because the defendants "had not met their burden, the Court correctly permitted the application of California law to a nationwide class." *Id.* at 550 (citing *In re MDC Holdings Securities Litigation,* 754 F.Supp. 785, 803–04, 808 (S.D.Cal.1990) (applying California law to nationwide class because defendant "has not made any attempt to satisfy the [California] three-part governmental interest test"); *In re Seagate Technologies Sec. Litigation,* 115 F.R.D. 264, 269, 274 (N.D.Cal.1987) (applying California law to nationwide class because "[a]bsent the defendant carrying [its] burden, California law would govern the foreign state plaintiffs' claims" and noting several other decisions reaching this conclusion)).

This case is unlike *Bruno* since, as the defendants did in *Mazza*, Defendants have established *on the facts of this case* that material differences exist between the laws of California and the laws of other states. *Contrast Mazza*, 666 F.3d at 594 (decertifying nationwide class when material differences existed between the laws of various states), *with Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 471 (C.D. Cal. 2012) *leave to appeal denied,* 13-80000, 2013 WL 1395690 (9th Cir. Apr. 1, 2013) (granting certification, in the context of a product defect case involving washing machines, of four state-specific classes of purchasers in California, Illinois, Maryland, and New York).

### b. Superiority

The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  In general, given the small size of each class member's claim at issue, class treatment should be favored in a consumer fraud claim like the one presented here in order to ensure fair and efficient adjudication of the action. *See Tait*, 289

F.R.D. at 486-87; *Pecover v. Elec. Arts Inc.*, 2010 U.S. Dist. LEXIS 140632, at *68 (N.D. Cal. Dec. 21, 2010) ("[T]he modest amount at stake for each purchaser renders individual prosecution impractical."); *see also Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'").

However, for the reasons stated in the previous section, the Court cannot consider the Plaintiff's proposed nationwide classes a superior method for the fair and efficient adjudication of the present controversy. *See Zinser,* 253 F.3d at 1192 ("We have previously held that when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the superior method of adjudication.") (internal quotations omitted).

**IV.    Disposition**

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Class Certification.

DATED:    January 30, 2014

*/s/ David O. Carter*
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE